**ROHLIN CONSTRUCTION CO., INC., Appellee,**

v.

**CITY OF HINTON, Iowa, and Plymouth County, Iowa, Appellants.**

No. 90–1033.

Supreme Court of Iowa.

Oct. 16, 1991.

Patrick J. Phipps of Metcalf, Thompson & Phipps, Moville, for appellant City of Hinton.

Robert J. Dull, County Atty., Le Mars, for appellant Plymouth County.

Donald J. Hemphill of Hemphill Law Office, Spencer, for appellee.

Considered by HARRIS, P.J., and SCHULTZ, CARTER, LAVORATO and SNELL, JJ.

SCHULTZ, Justice.

The issues in this appeal center on the question of whether the liquidated damage clauses in three road construction contracts were actually penalty clauses and therefore void. The trial court refused to impose liquidated damages on the contractor. Our court of appeals affirmed. We affirm both courts.

In the spring of 1988, defendants Plymouth County (county) and the City of Hinton (city) entered a joint project for resurfacing certain county and city roads. Defendants jointly planned and advertised for bids on one city and two county resurfacing projects. Plaintiff Rohlin Construction Co., Inc. (Rohlin) was the successful bidder and entered into two contracts with the county for total prices of $221,588.39 and $251,696.99, and one contract with the city for a price of $37,957. The two county contracts were dated May 31, 1988, and the city contract was dated June 16, 1988.

All three contracts contained a provision requiring that work be completed within forty "working days." The contracts specified a completion date of September 2, 1988, but did not specify a starting date. The contract language was prepared by the Iowa Department of Transportation on "proposal forms" which contained the following language:

> If this bid is accepted, Bidder agrees ... to either complete the work within the contract period or pay liquidated damages, which shall accrue at the daily rate specified below, for each additional working day the work remains uncompleted.

Each contract established $400.00 per day as the amount of liquidated damages.

Rohlin commenced work on September 17 and completed the project in less than thirty days. Rohlin completed the project 25.5 days past the September 2 deadline on the city contract and 27.5 days and 28 days late on the county contracts. The city withheld $10,200 and the county withheld $22,200 as liquidated damages for late completion of the project.

Rohlin then commenced separate law suits against the city and county seeking judgments against both defendants for the sums withheld, plus interest and attorney fees. Following trial, the court ruled in favor of Rohlin, allowing recovery for the amount of the withholdings plus interest at eight percent from November 15, but denying attorney fees.

On appeal, the city and county contend that the trial court erred in determining that the liquidated damage clause in each contract was unenforceable on the basis that it was actually a penalty clause. As a general rule, this determination is a question of law for the court which is dependant upon the court's construction of the contract. *McMurray v. Faust,* 224 Iowa 50, 60, 276 N.W. 95, 101 (1937); *Abel Constr. Co. v. School Dist.,* 188 Neb. 166, 170, 195 N.W.2d 744, 747 (1972); *McConnell v. L.C.L. Transit Co.,* 42 Wis.2d 429, 438, 167 N.W.2d 226, 230 (1969); 22 Am. Jur.2d *Damages* § 692 (1988); 25 C.J.S. *Damages* § 102 (1966). Our review is for correction of errors at law. Iowa R.App.P. 4.

In the past, we disfavored the use of liquidated damage clauses and favored interpretation of contracts that make stipulated sums penalties. *Elzey v. City of Winterset,* 172 Iowa 643, 646, 154 N.W. 901, 902 (1915). Later, we relaxed this penalty rule and recognized that parties may fix damages by contract when the amount of damages is uncertain and the amount fixed is fair. *Golden Sun Feeds, Inc. v. Clark,* 258 Iowa 678, 682, 140 N.W.2d 158, 161 (1966). This change in contractual interpretations is consistent with the trend of favoring liquidated damage clauses. *See Sides Constr. Co. v. City of Scott City,* 581 S.W.2d 443, 446–47 (Mo. Ct.App.1979); MacNeil, *Power of Contract and Agreed Remedies,* 47 Cornell L.R. 495, 509 (1962). Commentators maintain that application of a cost-benefit analysis to the traditional penalty rule suggests an anachronism. They reason that the cost efficiency of liquidated damages and the devel-

opment of more selective legal doctrines, such as unconscionability, serve as remedies that offset the need for penalties. Goetz & Scott, *Liquidated Damages, Penalties and the Just Compensation Principle: Some Notes of an Enforcement Model and a Theory of Efficient Breach*, 77 Colum.L.Rev. 554, 594 (1977).

We often turn to Restatements of the Law and believe it is appropriate to do so in this case. The American Law Institute adopts a more conservative approach as follows:

> Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.

Restatement (Second) of Contracts § 356(1) (1981). However, the American Law Institute shows no hostility toward liquidated damages by stating:

> The parties to a contract may effectively provide in advance the damages that are to be payable in the event of breach as long as the provision does not disregard the principle of compensation. The enforcement of such provisions for liquidated damages saves the time of courts, juries, parties and witnesses and reduces the expense of litigation. This is especially important if the amount in controversy is small. However, the parties to a contract are not free to provide a penalty for its breach. The central objective behind the system of contract remedies is compensatory, not punitive. Punishment of a promisor for having broken his promise has no justification on either economic or other grounds and a term providing such a penalty is unenforceable on grounds of public policy.

*Id.* comment a. This Restatement section also sets out the test for a penalty:

> Under the test stated in Subsection (1), two factors combine in determining whether an amount of money fixed as damages is so unreasonably large as to

be a penalty. The first factor is the anticipated or actual loss caused by the breach. The amount fixed is reasonable to the extent that it approximates the actual loss that has resulted from the particular breach, even though it may not approximate the loss that might have been anticipated under other possible breaches. Furthermore, the amount fixed is reasonable to the extent that it approximates the loss anticipated at the time of the making of the contract, even though it may not approximate the actual loss. The second factor is the difficulty of proof of loss. The greater the difficulty either of proving that loss has occurred or of establishing its amount with the requisite certainty, the easier it is to show that the amount fixed is reasonable. To the extent that there is uncertainty as to the harm, the estimate of the court or jury may not accord with the principle of compensation any more than does the advance estimate of the parties. A determination whether the amount fixed is a penalty turns on a combination of these two factors. If the difficulty of proof of loss is great, considerable latitude is allowed in the approximation of anticipated or actual harm. If, on the other hand, the difficulty of proof of loss is slight, less latitude is allowed in that approximation. If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable.

*Id.* comment b (citations omitted). We believe that application of these principles is appropriate to our determination in this case.

A review of the record reveals uncertainty of how the sum of $400 per day for liquidated damages was derived. This liquidated damage amount was placed in the specifications as a result of the county engineer's consultation with someone in the office of the Department of Transportation (DOT). A DOT construction manual contained a schedule of suggested rates for liquidated damages based strictly on the engineer's estimate of the contract price. According to the schedule in the manual, the city's contract called for $100 per day

in liquidated damages and the two county contracts called for liquidated damages of $200 and $300 per day respectively, for a total of $600. As noted previously, there were three separate contracts but the re-surfacing project was a joint city-county project involving connected highways. Thus, if the total amount rather than the individual amounts of the three contracts is used, then the manual's suggested rate is $400 per day in liquidated damages.

The county engineer indicated that the reason for deviating from the manual's suggested rates was due to the city and county's desire for a completion date prior to the increased traffic that would accompany the start of school and the grain-hauling season in Hinton. In addition, the engineer stated that "we wanted the liquidated damage amount to be sufficient to make the contractor aware that we need that project completed."

There is no valid justification for the individual liquidated damage amounts contained in each of the three contracts. Under the record of this case, the person who set the $400–per–day amount in each contract is unknown and was not called as a witness. Additionally, no witness was called to justify the suggested liquidated damage amounts contained in the DOT manual schedule. The county engineer did not conduct studies or present any other data suggesting that defendants anticipated that the government entities and the public could sustain damages equivalent to the $400–per–day liquidated damage amount contained in each of the three contracts. Furthermore, plaintiff called the school superintendent as a witness to give evidence that the school experienced no problems due to the road work. The county engineer also indicated that a Hinton grain elevator company had not complained that delayed completion of the road work caused the company or its patrons any damages or losses.

Plaintiffs seem to contend that Rohlin's delayed completion of the project caused no damages. The county did sustain damages, however, due to erosion because it could not seed the highway shoulders be-cause of the delay. Undoubtedly, there was some inconvenience to school bus drivers and to grain haulers because of the late completion.

We agree with the trial court that the provisions for liquidated damages in the three contracts were penalties rather than reasonable amounts for liquidated damages. "Liquidated damages must compensate for loss rather than punish for breach...." *Space Master Int'l, Inc. v. City of Worcester*, 940 F.2d 16, 18 (1st Cir.1991). We recognize that proving the amount of loss with any degree of certainty is difficult; nevertheless, the amount of liquidated damages set in each contract appears to be unreasonably large and goes far beyond the anticipated loss caused by delay in performance of the contract. The road project would inevitably cause some inconvenience to the parties and the public for a certain number of days regardless of when performed. Therefore, we conclude that the $400–per–day liquidated damage clause contained in each of the three contracts is an unrealistic amount and is therefore a penalty that should not be enforced.

The court of appeals affirmed the trial court's denial of an award of attorney fees to plaintiff. We agree that this determination is a matter within the discretion of the trial court and it did not abuse its discretion in denying plaintiff attorney fees.

Costs on appeal are taxed two-thirds to Plymouth County and one-third to the City of Hinton.

DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.