## IN THE COURT OF APPEALS OF IOWA

No. 24-0488
Filed March 5, 2025

**MICHAEL BAGBY,**
        Plaintiff-Appellant,

**vs.**

**FIRST STREET DELI II, LLC, and KIM HARKER AND ALEXIS BROWN, individually,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Buchanan County, Richard D. Stochl, Judge.

        Michael Bagby appeals the district court's remand order which entered judgment against First Street Deli II, LLC, Kimberly Harker, and Alexis Brown, and found Bagby partially waived his right to collect late fees.  **AFFIRMED.**

        Benjamin M. Lange of Swisher & Cohrt, PLC, Independence, and Austin McMahon of Swisher & Cohrt, PLC, Waterloo, for appellant.

        Jeremy B. Hahn of Roberts & Eddy, P.C., Independence, for appellees.

        Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**SANDY, Judge.**

Michael Bagby appeals the district court's remand order entering judgment against First Street Deli II, LLC (the LLC), Kimberly Harker, and Alexis Brown (collectively, the debtors), and finding Bagby partially waived his right to collect late fees.  Bagby argues the district court (1) exceeded the scope of the remand, (2) erred by ruling on the issue of waiver, and (3) erred by finding a partial waiver.  We affirm.

## I.  Background Facts and Proceedings

We summarized the underlying facts of this case in Bagby's initial appeal:

> The parties entered into the contract in question on August 31, 2020.  The language of the contract is straightforward: Bagby was to loan $15,000 to the LLC, Harker, and Brown . . . .  The debtors were to repay Bagby $15,000 in six months, with a specific schedule outlined for twenty payments of $750 that would be due roughly every one to two weeks.  There would be a late fee of $25 per day applied to any past-due payments.
> In reality, Bagby only loaned the debtors $10,000, and they made fifteen of the twenty payments for a total of $11,250 in return.  Many of the payments were submitted late.  Bagby never supplied the debtors with an invoice or other notice of the amount due until this lawsuit was filed in July 2021.  He provided an accounting of the loan in which he applies late fees from the eighth payment onward, even though five of the first seven payments were received late.  In this accounting, Bagby applies new payments to the late fees first rather than to the principal amount owed.  The contract was silent as to how future payments should be applied in relation to late fees.  Importantly, Bagby's accounting reflects that the debtors owed a principal amount of $15,000 despite him only loaning them $10,000.  Harker testified that this discrepancy in the principal was purposeful, as they had orally agreed to this arrangement in order for Bagby to avoid claiming interest for tax purposes.  Bagby estimated a total amount remaining due of $50,775 and requested the court enter a judgment whereby additional late fees would be added from the date he filed suit up until judgment.
> For context, Bagby and Harker have known each other for more than twenty years.  They engaged in a romantic relationship, which Bagby described as "casino buddies," from approximately April 2018 until June 2020.  Harker explained the relationship

continued in an on-again, off-again fashion until May 2021. Although Bagby disputed this timeline, he acknowledged they were romantically involved again after June 2020. Prior to the contract in question, Bagby loaned Harker varying amounts of money in a personal capacity. We do not have substantial information about these dealings.

At some point, Harker asked Bagby to purchase a deli shop that she was planning to buy with her daughter (co-debtor Brown) and lease it to them. Bagby declined. On August 29, Harker was at Bagby's home explaining that she needed $10,000 in order to move forward with the purchase of the deli shop in a couple of days. Bagby acknowledges that Harker was in a bad state and that she told him that she was going to commit suicide on his front lawn. The parties dispute whether Harker requested a loan from Bagby or he offered her the money. In any event, they agreed to proceed with a loan. Initially, Harker offered a $10,000 loan in exchange for $20,000 paid back in two months. These were the same terms she proposed to three other people who declined her offer. Harker and Bagby ultimately lowered the repayment plan to $15,000 over a six-month period. Harker typed up the contract and included the aforementioned late-fee provision. It is not clear who proposed this clause. Harker and her daughter, Brown, signed the contract in their individual capacities and on behalf of the LLC.

*Bagby v. First St. Deli II, LLC*, No. 22-1704, 2023 WL 5092833, at *1 (Iowa Ct. App. Aug. 9, 2023).

Following the September 2022 bench trial, the district court found the contract to be unconscionable and the late fees to be against public policy. The district court dismissed Bagby's petition. We reversed on initial appeal, finding the contract was not unconscionable, the late fees were not a penalty, and remanded to the district court for "entry of an order consistent with this opinion" and to "determine the consequences of [the late-fee] clause in light of the overall disposition."

On remand, the district court entered judgment against the debtors "in the amount of $26,865.00 plus statutory interest from the date of the filing of the petition." The court found Bagby partially waived his right to collect late fees, as

he only first "notified [the debtors] of his intent to impose late fees in his suit filed on July 28, 2021. He is entitled to late fees for those dates after the filing through [January 24, 2024]. 910 days have elapsed since filing. Bagby is entitled to $23,115.00 in late fees." Costs were assessed to the debtors.

Bagby now appeals.

## II. Standard of Review

We review "a judgment entered after a bench trial . . . for correction of errors at law." *Metro. Prop. & Cas. Ins. Co. v. Auto-Owners Mut. Ins. Co.*, 924 N.W.2d 833, 839 (Iowa 2019); *see also* Iowa R. App. P. 6.907. We are bound by the district court's factual findings "if supported by substantial evidence." *Metro. Prop. & Cas. Ins. Co.*, 924 N.W.2d at 839.

## III. Discussion

On appeal Bagby argues the district court (1) exceeded the scope of the remand, (2) erred by ruling on the issue of waiver, and (3) erred by finding a partial waiver.

*A. Scope of Remand*

The first approach by which Bagby challenges the district court's finding that he partially waived late fees is to argue that such a determination exceeded the scope of the remand.

"It is a fundamental rule of law that a trial court is required to honor and respect the rulings and mandates by appellate courts in a case." *City of Okoboji v. Iowa Dist. Ct.*, 744 N.W.2d 327, 331 (Iowa 2008). "A mandate to the district court contained in a decision of this court becomes the law of the case on remand, and a district court that misconstrues or acts inconsistently with the mandate acts

illegally by failing to apply the correct rule of law or exceeding its jurisdiction." *Id.* at 330.

In *Okoboji*, our supreme court held that "the district court must not read the mandate in a vacuum, but must consider the full opinion of the appellate court and the circumstances the opinion embraces." *Id.* at 332. Meaning the district court must comply with the "letter and spirit" of the appellate court's opinion. *Id.* (citation omitted).

Here, the district court's remand order did not exceed the scope of the remand. In our first appellate opinion, we only held that (1) the contract was not unconscionable, and (2) the late fees were not a penalty, before remanding for a district court order consistent with our opinion. The district court's finding on remand that the late fees were partially waived is not inconsistent with either of those holdings. That the late fees were not a penalty does not mean the late fees could not be waived—penalties and waivers are separate issues. *Compare Rohlin Constr. Co. v. City of Hinton*, 476 N.W.2d 78, 80 (Iowa 1991) (recognizing that clauses "fixing unreasonably large liquidated damages [are] unenforceable" (citation omitted)), *with Dunn v. Gen. Equities of Iowa, Ltd.,* 319 N.W.2d 515, 517 (Iowa 1982) (holding that an enforceable acceleration clause can be waived by the creditor's regular acceptance of late payments).

And the district court clearly would not have addressed waiver of any specific contract provision in its original order since it found all late fee provisions to be unenforceable. The district court did not exceed the scope of its remand.

*B. Decision to Rule on Issue of Waiver*

Bagby contends that the debtors "did not raise waiver as an affirmative defense in their answer" or their response to his motion for entry of judgment and the issue was not "tried with the consent of the parties."

"[W]aiver is an affirmative defense." *Hope K. Farms, L.L.C. v. Gumm*, No. 14–1371, 2016 WL 3556305, at *4 (Iowa Ct. App. June 29, 2016). "Failure to plead an affirmative defense normally results in waiver of the defense, unless the issue is tried with the consent of the parties." *Dutcher v. Randall Foods*, 546 N.W.2d 889, 893 (Iowa 1996).

Although the debtors did not raise the late fee waiver issue in their pleadings, the issue was litigated at multiple points during trial, without objection. The issue was, in fact, first raised by Bagby's trial counsel:

> BAGBY'S COUNSEL: According to the contract is the $25.00-a-day late fee still accruing? You've never agreed to waive it; is that right? BAGBY: Correct.
> BAGBY'S COUNSEL: So it's still accruing to this day? BAGBY: Yes.

After Bagby opened the door to arguments relating to waiver of late fees, the debtors' trial counsel proceeded to question witnesses on the issue, including Bagby. Bagby cannot later revoke his own consent to trying this issue. The court did not err in ruling on the late fees waiver.

*C. Finding of Partial Waiver*

"Waiver applies when a party voluntarily relinquishes a known right." *EMC Ins. Grp., Inc. v. Shepard*, 960 N.W.2d 661, 672 (Iowa 2021) (citation omitted). "The essential elements of a waiver are the existence of a right, knowledge, actual

or constructive, and an intention to relinquish such a right." *Id.* (citation omitted). "Waiver can be either express or implied." *Id.* (citation omitted).

Bagby admitted that he never provided the debtors with invoices of the amounts owed or fees accumulated. He admitted he never informed the debtors how much would be needed to pay off the loan. Bagby admitted that he himself "really didn't know what amount was owed to [him]; [he] just knew there was late payments," "it was adding up a lot," and that he did not calculate the amount owed until he hired an attorney. At the time the debtors were making payments, there was no accounting of what payments, or any, were applied to late fees rather than the principal. No party, including Bagby, had any clue the extent to which late fees should be accumulating under the contract.

And beyond stating that late payments "will have an additional $25.00 per day late charge added to them," the contract Bagby drafted does not explain how late fees will be triggered or assessed. *See Iowa Fuel & Mins., Inc. v. Iowa State Bd. of Regents*, 471 N.W.2d 859, 862–63 (Iowa 1991) (holding that "when there are ambiguities in a contract, they are strictly construed against the drafter"). Bagby and Harker, who have a complicated romantic history, also had a free-wheeling and informal lending relationship that colored the manner in which they conducted business with each other. Under these facts, and giving credibility deference to the district court, it was not legal error for the district court to conclude that Bagby had waived his rights under the late fee provision of his contract with the debtors.

Accordingly, we affirm the district court's remand order in all respects.

**AFFIRMED.**